UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ILYA FELIKSOVICH IOSILEVICH,

                Plaintiff,

      v.

UNITED STATES, JOSEPH R. BIDEN, JR.,
UNITED STATES DEPARTMENT OF
DEFENSE, LLOYD J. AUSTIN, III, UNITED
STATES DEPARTMENT OF THE ARMY,
CHRISTINE E. WORMUTH, STATE OF
NEW YORK, THE HONORABLE KATHY
HOCHUL, NEW YORK STATE DIVISION OF
MILITARY AND NAVAL AFFAIRS, MAJOR
GENERAL RAYMOND F. SHIELDS, JR.,

                Defendants.
------------------------------------------------------------x

**MEMORANDUM AND ORDER**
22-CV-6505 (RPK) (LB)

RACHEL P. KOVNER, United States District Judge:

*Pro se* plaintiff Ilya Feliksovich Iosilevich, a former member of the Army National Guard, brought this lawsuit against the United States of America, President Joseph R. Biden, Jr., the United States Department of Defense, Secretary of Defense Lloyd J. Austin, III, Secretary of the Army Christine E. Wormuth, the United States Department of the Army (collectively, the "Federal Defendants"); and the State of New York, New York State Division of Military and Naval Affairs ("DMNA"), Governor Kathy Hochul, and Major General Raymond F. Shields, Jr. (collectively, the "State Defendants"). Plaintiff alleges that he (i) was unlawfully separated from the Army National Guard, (ii) was not paid a basic allowance and family separation pay, (iii) was not reimbursed for travel expenses, and (iv) did not receive the requisite number of drills. Compl. 8–9 (Dkt. #1).* Both the Federal Defendants and the State Defendants have moved to dismiss the

---

\* All citations to the complaint and its exhibits follow the paginations assigned by the Electronic Court Filing ("ECF") system.

1

complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  *See* State Defs.' Mot. to Dismiss (Dkt. #16); Fed Defs.' Mot. to Dismiss (Dkt. #21).  For the reasons explained below, the motions to dismiss are granted.

## BACKGROUND

The following facts are drawn from the operative complaint and attached exhibits, and are assumed true for the purposes of this order.

Plaintiff is a former member of the Army National Guard.  Compl. 11.  The Army National Guard is composed of portions of state militias that are "federally recognized." 32 U.S.C. § 101(4).  Those state militias receive federal funding and are governed by federal regulations.  *See Ass'n of Civilian Technicians, Inc. v. United States*, 603 F.3d 989, 992–93 (D.C. Cir. 2010) (citing 32 U.S.C. §§ 102–07, 110).  Army National Guard members "hold dual enlistments in both a state militia (a State national guard) and a federal force (the National Guard of the United States)." *Hanson v. Wyatt*, 552 F.3d 1148, 1151 (10th Cir. 2008) (citing *Perpich v. Dep't of Def.*, 496 U.S. 334, 345 (1990)).

Plaintiff enlisted in the Army National Guard in September 2018 on a six-year enlistment contract, becoming a member of both the New York Army National Guard ("NYANG") and the United States Army National Guard.  Compl. 11; *see Jones v. N.Y. State Div. of Mil. & Naval Affs.*, 166 F.3d 45, 47 (2d Cir. 1999) ("An enlistee of the NYANG simultaneously joins the United States Army National Guard").  Under his enlistment contract, plaintiff was required to complete (i) basic training, or "boot camp," (ii) Officer Candidate School, and (iii) the Basic Officer Leadership Course ("BOLC").  Compl. 11.  By regulation and contract, plaintiff was required to complete the BOLC course within 18 months of his being commissioned as a Second Lieutenant.  That period

2

could be extended to 24 months, and then extended again to not more than 36 months. Compl., Ex. A at 17 (Dkt. #1-2); *see* Nat. Guard Reg. 600-100 ¶ 8-9.

The enlistment contract also provided that plaintiff, who was married at the time of enlistment, would be paid a basic allowance, as well as family separation pay if he was separated from his family for more than 30 consecutive days. Compl. 29.

Plaintiff completed boot camp and Officer Candidate School, and was commissioned as a Second Lieutenant on October 24, 2019. *Id.* at 11; *see* Compl., Ex. A at 17.

Between September 2020 and February 2021, plaintiff was arrested four times. Compl. 11. While the criminal cases arising out of the first two arrests were dismissed, the cases arising from the third and fourth arrests remained pending in Kings County Criminal Court at the time plaintiff filed this lawsuit. *Id.* at 11–12. Plaintiff "assert[s] that all four arrests were false arrests." *Id.* at 12.

In February 2021, after plaintiff's fourth arrest, his superior officer issued him a Developmental Counseling Form informing plaintiff that he was being recommended for withdrawal of federal recognition for "Moral or Professional Dereliction." *Id.* at 11; Compl., Ex. A at 18 (Dkt. #1-2). Under the applicable National Guard regulations, certain officer conduct constitutes an act of "moral and professional dereliction," which requires the withdrawal of the officer's federal recognition. *See* Nat. Guard Reg. 635-101 Sec. II(9).

Although plaintiff was scheduled to attend BOLC in August 2021, his command informed him he was not permitted to attend while the cases arising out of his two most recent arrests remained unresolved. Compl. 12. Plaintiff sent an e-mail to his superiors, arguing that he should nevertheless be able to attend BOLC, but he was informed in July 2021 that he would not be permitted to attend because he was "flagged" until his cases were resolved. *Id.* at 12–13. Under

3

Army regulations, a "flag" is an administrative tool that is "emplaced during some type of disciplinary or administrative action until that action is concluded" and prevents "[e]xecution of favorable actions to a Soldier." Army Reg. 600-8-2 ¶ 2-1(a), (c).

In a Memorandum for Record dated February 12, 2021, plaintiff was granted a waiver of extension from 18 months to 24 months to complete his required training. Compl., Ex. A at 17. But the memorandum also explained that plaintiff would be separated unless he either completed the training by October 24, 2021, or was granted a waiver of extension to 36 months. *Ibid.* Plaintiff e-mailed his superior officer requesting a waiver of extension to 36 months, or, alternatively, to be allowed to attend BOLC as soon as possible, Compl., Ex. A at 2–4, but those requests were denied, Compl. 21; *id.*, Ex. B at 40–41 (Dkt. #1-2).

Because plaintiff did not attend BOLC within the allotted time, he was involuntarily separated from the National Guard. In November 2021, plaintiff received his separation order, effective as of October 25, 2021, stating he was separated pursuant to National Guard Regulation 600-100 for "NP Non-Sel/Promotion." Compl., Ex. F at 140 (Dkt. # 1-2) (capitalization altered).

Plaintiff asked the Inspector General of the DMNA to investigate his alleged wrongful separation, as well as the nonpayment of various allowances. Compl., Ex. B at 39–42. The Inspector General's Office informed plaintiff that it did not have the authority to reinstate him but could "conduct a due-process review." *Id*. at 43. The Inspector General's Office requested plaintiff fill out a "DA Form 1559, Inspector General Action Request." *Ibid*. Plaintiff does not allege that he filled out that form or continued to seek assistance from the Inspector General's Office.

Plaintiff filed this lawsuit on October 26, 2022. Liberally construed, the complaint raises four claims under federal law. First, plaintiff alleges that he was unlawfully separated from the

4

Army National Guard because his superior officers failed to follow mandatory Army and National Guard regulations by refusing to send him to BOLC, denying him a waiver of extension, and failing to provide him with a hearing prior to his separation. *See id*. at 8, 13–28. He alleges that these actions violated the Due Process, Equal Protection, and Contract Clauses of the U.S. Constitution, Section 323 of Title 32, as well as the Universal Declaration of Human Rights. In addition, plaintiff alleges that he was not paid certain allowances while in military service, in violation of the Contract Clause and Sections 403 and 427 of Title 37. *Id*. at 9, 29–30. Next, plaintiff alleges that he was not paid for his authorized return travel from boot camp in violation of the Contract Clause, Section 452 of Title 37, and certain regulations. *Id.* at 9, 31. Finally, plaintiff alleges that he did not receive the drills enumerated under his enlistment contract, in violation of the Contract Clause, Section 10147 of Title 10, and Section 502 of Title 32. *Id.* at 9, 32–33. Because the complaint does not specify whom each claim is brought against, the Court liberally construes the complaint to allege each of the four claims against both the State and Federal Defendants.

Plaintiff invokes 42 U.S.C. § 1983 as a basis of jurisdiction for his federal claims against the State Defendants. Compl. 7. The Court liberally construes the complaint to bring the Section 1983 claims against Governor Hochul and Major General Shields in both their official and individual capacities. *See Schultz v. Egan*, 103 F. App'x 437, 442 (2d Cir. 2004). And because plaintiff's unlawful-separation claim against Major General Shields and Governor Hochul seeks prospective relief for asserted ongoing violations of federal law, the Court construes that claim as based in part on the doctrine of *Ex parte Young*, 209 U.S. 123, 154 (1908).

Plaintiff relies on *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), as a basis for jurisdiction over his federal claims against the Federal Defendants. Compl. 7. Since the Little Tucker Act, 28 U.S.C. § 1346(a)(2), "provides both subject

5

matter jurisdiction and [a waiver of] sovereign immunity for non-tort claims 'against the United States . . . founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States,'" *C.H. Sanders Co. v. BHAP Hous. Dev. Fund Co.*, 903 F.2d 114, 119 (2d Cir. 1990) (quoting 28 U.S.C. § 1346(a)(2)), and the complaint alleges that the United States violated its contractual obligations to plaintiff, the Court liberally construes the complaint to invoke the Little Tucker Act as well. The Court construes plaintiff's unlawful-separation claim seeking injunctive relief against the individual Federal Defendants—President Biden, Secretary Austin, and Secretary Wormuth—as a claim for a writ of mandamus pursuant to 28 U.S.C. § 1361.

Plaintiff also alleges violations of the New York State Constitution, the New York State Administrative Procedures Act, and New York State common law. Compl. 8–9.

Plaintiff seeks damages for all his claims. He also seeks injunctive relief for his unlawful-separation claim—namely, an order reinstating him to the Army National Guard, directing that he be sent to BOLC, and ordering his promotion to First Lieutenant. *Id*. at 36.

The Federal and State Defendants have filed motions to dismiss. *See* State Defs.' Mot. to Dismiss; Fed. Defs.' Mot. to Dismiss.

## STANDARD OF REVIEW

To survive a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), a plaintiff bears the burden of proving by a preponderance of the evidence that the Court has "the statutory or constitutional power to adjudicate" the action. *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 417 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (same). When considering a motion to dismiss

under Rule 12(b)(1), the court takes as true the factual allegations in the complaint but does not draw inferences favorable to the party asserting jurisdiction. *See J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004).

Under Federal Rule of Civil Procedure 12(b)(6), a court must grant a motion to dismiss for failure to state a claim if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint fails to plausibly state a claim and is properly dismissed when "the allegations in a complaint, however true, could not raise a claim of entitlement to relief" as a matter of law, *Twombly*, 550 U.S. at 558, or when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" as a matter of law, *Iqbal*, 556 U.S. at 679.

The complaint of a *pro se* plaintiff must be "liberally construed, and . . . however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). *Pro se* status, however, does not "exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

## DISCUSSION

The State and Federal Defendants' motions to dismiss are granted. The Court lacks subject matter jurisdiction over the federal-law claims (i) against the State of New York and the DMNA; (ii) seeking damages against Governor Hochul and Major General Shields in their official capacities; (iii) seeking damages for unlawful separation against the United States, the Department

7

of Defense, and the Department of the Army; and (iv) predicated on a violation of the Universal Declaration of Human Rights. The remaining claims under federal law are dismissed for failure to state a claim and because plaintiff did not exhaust administrative remedies. In the absence of a viable federal claim, the Court declines to exercise supplemental jurisdiction over plaintiff's state-law claims.

## I.  Claims Under Federal Law

As set forth below, some of plaintiff's federal-law claims are dismissed for want of subject matter jurisdiction, and the rest of the claims are dismissed for failure to exhaust or failure to state a claim.

### A.  Subject Matter Jurisdiction Does Not Exist for Some of Plaintiff's Federal Claims

The Court dismisses for lack of subject matter jurisdiction plaintiff's claims under federal law (i) against the State of New York and the DMNA; (ii) against Governor Hochul and Major General Shields in their official capacities, insofar as plaintiff seeks damages; (iii) against the United States, the Department of Defense, and the Department of the Army for unlawful separation; and (iv) based on violation of the Universal Declaration of Human Rights.

#### 1.  *Sovereign Immunity Bars Plaintiff's Section 1983 Claims Against the State of New York and the DMNA*

Any federal claims against the State of New York and the DMNA are barred by sovereign immunity. As a general matter, States may not be sued in federal court by private parties "unless they have waived their Eleventh Amendment immunity" or unless Congress has abrogated it. *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (citation and quotation marks omitted); *see Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253–54 (2011). Congress has not abrogated sovereign immunity for Section 1983 claims, *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990), nor has the State of New York or the DMNA waived immunity, *see Li v. Lorenzo*, 712

8

F. App'x 21, 22 (2d Cir. 2017) (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38–40 (2d Cir. 1977)).  Accordingly, all plaintiff's claims against the State of New York and DMNA are barred by sovereign immunity and cannot proceed.

> 2. *Sovereign Immunity Bars Plaintiff's Section 1983 Claims for Damages Against Governor Hochul and Major General Shields in Their Official Capacities*

Sovereign immunity also bars plaintiff's claims for damages against Governor Hochul and Major General Shields in their official capacities.  Sovereign immunity extends to "actions for the recovery of money from the state" against "state agents." *Leitner v. Westchester Cmty. Coll.*, 779 F.3d 130, 134 (2d Cir. 2015) (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *Hans v. Louisiana*, 134 U.S. 1, 15 (1890)).  A lawsuit brought against officials of a government entity in their official capacities is "in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001).  Because plaintiff's claims for damages against the individual State Defendants in their official capacities are effectively "actions for the recovery of money from the state," *Leitner*, 779 F.3d at 134, sovereign immunity bars them.

To the extent plaintiff seeks injunctive relief for retrospective payments of money, such claims are equally barred by sovereign immunity because they "in form or substance, seek compensatory damages (rather than prospective . . . relief) which will be paid with funds from the state treasury (rather than from the pockets of individual officials)." *Sanders v. Parker*, No. 22-CV-5141 (PKC) (JRC), 2023 WL 4902496, at *5 (E.D.N.Y. Aug. 1, 2023) (quotation marks omitted) (quoting *Berman Enters., Inc. v. Jorling*, 793 F. Supp. 408, (E.D.N.Y. 1992)).

> 3. *This Court Lacks Jurisdiction Over Plaintiff's Unlawful-Separation Claim Seeking Damages Against the United States, the Department of Defense, and the Department of the Army*

This Court does not have subject matter jurisdiction over plaintiff's unlawful-separation claim against the United States, the Department of Defense, and the Department of the Army.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). The Little Tucker Act, 28 U.S.C. § 1346(a)(2), "waives sovereign immunity [for] actions pursuant to contracts with the United States . . . and actions brought pursuant to money-mandating constitutional provisions, statutes, regulations, or executive orders." *Martinez v. United States*, 333 F.3d 1295, 1302–03 (Fed. Cir. 2003). Here, plaintiff alleges both a breach of a contract with the United States and an unlawful-separation claim that is cognizable under a money-mandating statute, the Military Pay Act, 37 U.S.C. § 204. *See Martinez*, 333 F.3d at 1303 ("In the context of military discharge cases, the applicable 'money-mandating' statute that is generally invoked is the Military Pay Act, 37 U.S.C. § 204.").

The Little Tucker Act, however, grants jurisdiction only over "claim[s] against the United States," 28 U.S.C. §§ 1346(a)(2), not claims against individual federal officers. *See Jones v. United States*, 440 F. App'x 916, 919 (Fed. Cir. 2011) (construing 28 U.S.C. § 1491(a)(1)). In addition, the Little Tucker Act grants federal district courts concurrent jurisdiction with the Court of Federal Claims only over a "civil action or claim against the United States, not exceeding $10,000 in amount." 28 U.S.C. § 1346(a)(2). The Court of Federal Claims has exclusive jurisdiction over claims exceeding a $10,000 amount-in-controversy. *See* 28 U.S.C. § 1491(a)(1); *Up State Fed. Credit Union v. Walker*, 198 F.3d 372, 373 n.1, 374 (2d Cir. 1999); *Thompson v. United States Dep't of Educ.*, No. 20-CV-693 (AJN), 2021 WL 1199493, at *3 (S.D.N.Y. Mar. 30, 2021).

The Court lacks jurisdiction over plaintiff's unlawful-separation claim—as opposed to his allowances, reimbursement, and required drills claims—against the United States, the Department of Defense, and the Department of the Army because plaintiff seeks over $10,000 in damages for that claim. In his unlawful-separation claim, plaintiff alleges that the "injuries" he suffered included "loss of income from the time of separation as of November 1, 2021 until present in military drill pay, which equates [to] about $550.00 per month[] plus about $4000.00 for two weeks of drills," and loss of pension benefits. Compl. 35. Plaintiff seeks relief including "backpay for loss of income from the time [he] was involuntarily and wrongfully separated until time of reinstatement, which [he] calculate[s] to be about $10,000.00." *Id*. at 36.

Plaintiff seeks to avoid dismissal by arguing that he did not plead damages that exceed $10,000, *see* Pl.'s Opp'n to Fed. Defs.' Mot. to Dismiss 8 (Dkt. #30), but plaintiff's own discussion of his "injuries" makes clear that, while the damages sought are "about $10,000.00," they exceed that threshold. Courts determine the amount in controversy "at the time [plaintiff] initiated [his] action." *Keller v. Merit Sys. Prot. Bd.*, 679 F.2d 220, 222 (11th Cir. 1982). Here—setting aside an unspecified "loss of pension benefits"—plaintiff's alleged damages comprised of backpay at a rate of $550 per month for the period between plaintiff's alleged separation on November 1, 2021, and the filing of this lawsuit on October 26, 2022, which amounts to at least $6,050, in addition to the $4,000 for "two weeks of drills," totals to at least $10,050. Compl. 35. And while plaintiff may "waive damages in excess of $10,000" so that he may avail himself of federal district court jurisdiction, *Chabal v. Reagan*, 822 F.2d 349, 353 (3d Cir. 1987) (collecting cases); *Goble v. Marsh*, 684 F.2d 12, 17 (D.C. Cir. 1982) ("In cases involving waiver of claims against the government in excess of $10,000, the existence of jurisdiction in the District Court depends on the plaintiff's choice, as long as the waiver is clearly and adequately expressed."), plaintiff does not

appear to do so here.  *See* Pl.'s Opp'n to Fed. Defs.' Mot. to Dismiss 8 (stating that plaintiff "wouldn't know the exact amount [of damages] until the discovery stage").

Accordingly, the Court of Federal Claims has exclusive jurisdiction over any claim of plaintiff's under the Tucker Act for unlawful separation.  And since plaintiff identifies no other statute waiving the sovereign immunity of the United States, the Department of Defense, and the Department of the Army for his unlawful-separation claim, subject matter jurisdiction over that claim is absent.

> 4. *This Court Lacks Jurisdiction Over Plaintiff's Claims Under the Universal Declaration of Human Rights*

Plaintiff's claims brought under the Universal Declaration of Human Rights is also dismissed for lack of subject matter jurisdiction.  A federal court lacks jurisdiction over a claim that "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction" or is "wholly insubstantial and frivolous." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (citations omitted).  Plaintiff's claims under the Universal Declaration of Human Rights are "wholly insubstantial and frivolous" because the Declaration is "a nonbinding resolution, not a treaty," and does not create a federal cause of action.  *Greenland v. Mun. of Westchester Cnty.*, No. 18-CV-3157 (KMK), 2019 WL 4640061, at *5 (S.D.N.Y. Sept. 24, 2019) (citation omitted); *Joyner-El v. Giammarella*, No. 09-CV-3731 (NRB), 2010 WL 1685957, at *3 n.4 (S.D.N.Y. Apr. 15, 2010) ("[The Universal Declaration of Human Rights] do[es] not create federal causes of action." (citation omitted)).

**B. Plaintiff's Remaining Federal Claims Are Dismissed for Failure to State a Claim and Failure to Exhaust**

The remaining federal claims are dismissed for failure to state a claim and because plaintiff has not exhausted his administrative remedies.

*1. Plaintiff Fails to State a Bivens Claim*

Plaintiff fails to state a claim against the Federal Defendants under *Bivens*. "The only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities." *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007). But a *Bivens* claim is unavailable to a military serviceman suing his superior officers "whenever the serviceman's injury arises out of activity 'incident to service.'" *United States v. Stanley*, 483 U.S. 669, 670 (1987); *see Chappell v. Wallace*, 462 U.S. 296, 300 (1983). Because plaintiff plainly complains about activities incident to his military service, he cannot seek redress through *Bivens*.

*2. Plaintiff Has Not Exhausted His Administrative Remedies*

Failure to exhaust dooms plaintiff's other federal claims—that is, (i) plaintiff's Section 1983 unlawful-separation claim seeking nonmonetary injunctive relief against Governor Hochul and Major General Shields in their official capacities (which the Court construes as brought under *Ex parte Young*); (ii) plaintiff's Section 1983 damages claims against Governor Hochul and Major General Shields in their individual capacities; (iii) plaintiff's Little Tucker Act allowances, reimbursement, and required drills claims against the United States, the Department of Defense, and the Department of the Army; and (iv) any mandamus claim against the individual Federal Defendants seeking reinstatement and promotion.

i. <u>Defendants' jurisdictional arguments as to these claims lack merit.</u>

Defendants argue that several of plaintiff's remaining federal claims should also be dismissed for want of jurisdiction, but these arguments lack merit.

First, the State Defendants suggest that plaintiff's claims for nonmonetary injunctive relief against Governor Hochul do not fall within the *Ex parte Young* exception to the Eleventh Amendment's sovereign-immunity bar because plaintiff has not alleged an adequate connection

13

between Governor Hochul and the acts that plaintiff challenges as unlawful. State Defs.' Br. 7 (Dkt. #17). Under Second Circuit case law, when a plaintiff sues a state official and seeks to enjoin a governmental act as unlawful under *Ex parte Young*, "an official need only have a connection with the act, and nothing more, for the *Ex parte Young* exception to apply." *McKethan v. N.Y. State Dep't of Corr. Servs.*, No. 10-CV-3826 (PAE), 2012 WL 2367033, at *2 (S.D.N.Y. June 21, 2012). While the State Defendants assert that plaintiff fails to allege that Governor Hochul is responsible for enforcing the federal statutes and Army regulations at issue here, *see* State Defs.' Br. 7, it is undisputed that the Governor is the commander-in-chief of the NYANG, *Jones*, 166 F.3d at 47, which is governed by the relevant federal laws and regulations, *see Ass'n of Civilian Technicians*, 603 F.3d at 993. In addition, under New York Military Law § 131.4, Governor Hochul has the authority to redress wrongs committed by commanding officers, which may include actions that violate federal laws and regulations. Accordingly, the Court has subject matter jurisdiction over plaintiff's claim for injunctive relief against Governor Hochul (in addition to Major General Shields) insofar as those claims seek prospective relief such as reinstatement and promotion, rather than retrospective relief that requires payment of funds from the state treasury.

Second, the Federal Defendants contend that the Little Tucker Act does not provide this Court with jurisdiction over plaintiff's allowances, reimbursement, and required drills claims against the United States, the Department of Defense, and the Department of the Army because plaintiff's Little Tucker Act claims, taken together, seek more than $10,000 in damages. *See* Fed. Defs.' Br. 10 (Dkt. #21-1). But because the Little Tucker Act vests federal district courts with subject matter jurisdiction over a "civil action *or claim* against the United States, not exceeding $10,000 in amount," 28 U.S.C. § 1346(a)(2) (emphasis added), the Court has jurisdiction over each Little Tucker Act claim seeking $10,000 or less—even if those claims in aggregate seeks more

14

than $10,000 from the federal government.  In other words, the Little Tucker Act's "limit is not violated when plaintiffs combine a number of claims that are individually less than $10,000 but cumulatively exceed that amount." *Baker v. United States*, 722 F.2d 517, 518 (9th Cir. 1983) (citing *United States v. Louisville & N.R. Co.*, 221 F.2d 698, 701 (6th Cir. 1955)).  Accordingly, this Court does have subject matter jurisdiction over plaintiff's Little Tucker Act claims pertaining to non-payment of allowances, failure to reimburse certain expenses, and failure to provide required drills.

Finally, I decline to dismiss on jurisdictional grounds plaintiff's claim against the individual Federal Defendants seeking reinstatement and promotion.  The Second Circuit has held that when a claim presents a thorny question of statutory jurisdiction (as opposed to Article III jurisdiction), but the substance of the asserted claim is "plainly without merit," it is "prudent" to assume the existence of jurisdiction and resolve the easier merits question.  *Butcher v. Wendt*, 975 F.3d 236, 242–43 (2d Cir. 2020) (quoting *Ivanishvili v. U.S. Dep't of Justice*, 433 F.3d 332, 338 n.2 (2d Cir. 2006)).  Whether the Tucker Act requires plaintiff to bring his unlawful-separation claim seeking promotion or reinstatement in the Court of Federal Claims, alongside his related claim for monetary relief, turns on a difficult question of statutory interpretation that has divided the courts of appeals.  *See Vietnam Veterans of Am. v. Sec'y of the Navy*, 843 F.2d 528, 535 (D.C. Cir. 1988) (noting that the Fourth, Fifth, Sixth, Ninth, and Eleventh Circuits have "all refus[ed] to permit government employees' splitting of backpay and reinstatement claims," but that the Third and Eighth Circuits and the Court of Federal Claims have "permitt[ed] splitting of backpay and reinstatement claims").  In addition, the parties have not briefed the issue.  And as explained below, any mandamus claim seeking reinstatement and promotion fails on its merits for lack of exhaustion.  *See* pp. 16–18, *infra*.  Accordingly, I resolve plaintiff's apparent mandamus claim

15

against the individual Federal Defendants based on the merits, rather than resolving an unbriefed and difficult question of statutory jurisdiction.

> ii. Plaintiff's remaining federal-law claims cannot proceed because plaintiff did not exhaust administrative remedies before filing suit.

The doctrine of intramilitary immunity generally bars federal courts from "review[ing] purely discretionary decisions by military officials which are within their valid jurisdiction," but an exception allows jurisdiction over lawsuits in which a plaintiff alleges that "the military has failed to follow its own mandatory regulations in a manner substantially prejudicing a service member." *Jones*, 166 F.3d at 52 (citation omitted). "[A] party may not seek federal judicial review" of such a decision, though, "until the party has first sought all possible relief within the agency itself." *Guitard v. U.S. Sec. of the Navy*, 967 F.2d 737, 740 (2d Cir. 1992). This rule applies equally to state Army National Guard members seeking to challenge the Army National Guard's failure to follow its own regulations. *See Jones*, 166 F.3d at 54.

Plaintiff has not exhausted his administrative remedies here. "[T]o be reinstated as an officer of the [Army] National Guard, an officer must pursue remedies both within [the Army National Guard of the United States] and within the [Army] National Guard of his state." *Hanson v. Wyatt*, 552 F.3d 1148, 1151 (10th Cir. 2008) (citation omitted). For the federal component of relief, the member must first bring his claims before the Army Board for Correction of Military Records ("ABCMR"), which may "correct any [Army] record" whenever it is "necessary to correct an error or remove an injustice." *Janniere v. U.S. Army*, 34 F. Supp. 2d 850, 852 (E.D.N.Y. 1999) (quoting 10 U.S.C. § 1552(a)). The ABCMR has the authority to consider claims based on constitutional, statutory or regulatory violations, *id.* at 853, "can reinstate [the officer] in a comparable active federal reserve status, restore his pay and order compensatory back pay," *Hansen*, 552 F.3d at 1152 (citing 10 U.S.C. 1552(c)), and can "pay . . . a claim for the loss of pay,

16

allowances, compensation, emoluments, or other pecuniary benefits," 10 U.S.C. § 1552(c). *See Williams v. Wilson*, 762 F.2d 357, 360 n.6 (4th Cir. 1985). The ABCMR, though, cannot order reinstatement to the state Army National Guard. *See ibid.*; *Hansen*, 552 F.3d at 1152. That relief can be obtained through state administrative procedures: the New York Military Law provides that "[a]ny member of the organized militia who believes himself wronged by his commanding officer" and who "is refused redress . . . may complain to any superior officer who shall forward the complaint to the adjutant general." *Yarusso v. 106 Rescue Wing, N.Y. Air Nat'l Guard*, 511 F. App'x 13, 14 (2d Cir. 2013) (quoting N.Y. Mil. Law § 131.4). If the adjutant general "refuses redress," the member "who initiated the complaint may appeal to the governor for redress." *Ibid.*

Plaintiff did not fully avail himself of any administrative avenue. Plaintiff does not dispute that he never brought his claims before the ABCMR, in part because he believed it would have been "pointless." *See* Pl.'s Opp'n to State Defs.' Mot. to Dismiss 10–14 (Dkt. #23); Pl.'s Opp'n to Fed. Defs.' Mot. to Dismiss 11–19. Nor did plaintiff exhaust his state administrative remedies. While plaintiff wrote a letter to the Inspector General of the DMNA, *see* Compl. 27, the Inspector General was limited to "conducting a due-process review to determinate if [plaintiff] was afforded an opportunity for redress as provided by law or regulation." Compl., Ex. B at 43. To exhaust his claims, plaintiff should have pursued the redress provided under New York Military Law § 131.4 by first "complain[ing] to any superior officer who shall forward the complaint to the adjutant general," and then, should the adjutant general refuse redress, "appeal[ing] to the governor for redress." N.Y. Mil. Law § 131.4; *see Yarusso*, 511 F. App'x at 15 (finding plaintiff failed to exhaust his administrative remedies because he "failed to appeal . . . to the Governor of New York"); *Jones v. N.Y. State Div. of Mil. & Naval Affs.*, No. 93-CV-0862, 1997 WL 266765, at *10 (N.D.N.Y. May 7, 1997) (finding plaintiff's allegation that an assemblyman wrote a letter on his

17

behalf requesting the governor to "investigate the situation" did not exhaust plaintiff's administrative remedies under New York Military Law § 131.4), *aff'd*, 166 F.3d 45 (2d Cir. 1999).

While exhaustion of administrative remedies may not be required when "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a "substantial constitutional question," *Guitard*, 967 F.2d at 741 (internal quotation marks and citation omitted), none of those circumstances are present in this case. First, the federal and state administrative processes, as outlined above, provide plaintiff with a genuine opportunity for adequate relief. Second, "the injuries that generally attend a discharge from employment" do not constitute irreparable harm. *Id.* at 742. Third, because plaintiff has "three years from the date of his [separation] to request a review of his [separation] from the ABCMR," or by October 25, 2024, *Janniere*, 34 F. Supp. 2d at 853 (citing 10 U.S.C. § 1552(b)), and there does not appear to be a time limit on when a plaintiff can seek redress under New York Military Law § 131.4, his administrative appeals would not be futile. Finally, while plaintiff alleges that he was not afforded the constitutional safeguards of due process and equal protection, those constitutional claims can be heard through the administrative processes and therefore "are not properly treated as giving rise to an exception to the exhaustion requirement." *Janniere*, 34 F. Supp. 2d at 853.

Because plaintiff did not exhaust the federal and state administrative remedies available to him before bringing suit, his claims are dismissed.

## II.     Claims Under State Law

Having dismissed plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over plaintiff's state-law claims brought under the New York State Constitution, New York State Administrative Procedures Act, and New York State common law. Four factors bear

18

on whether it is appropriate to exercise supplemental jurisdiction: "judicial economy, convenience, fairness, and comity." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 81 (2d Cir. 2018). Generally, where "a plaintiff's federal claims are dismissed before trial, 'the state claims should be dismissed as well.'" *Brzak v. United Nations*, 597 F.3d 107, 113–14 (2d Cir. 2010) (quoting *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008)); *see Pension Benefit Guar. Corp. ex rel. Saint Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013); *Klein & Co. Futures, Inc. v. Bd. of Trade*, 464 F.3d 255, 262 (2d Cir. 2006).

Plaintiff has not provided a persuasive reason to depart from the usual practice of declining to exercise supplemental jurisdiction once federal claims are dismissed. Accordingly, I decline to exercise supplemental jurisdiction over plaintiff's state-law claims.

## CONCLUSION

For the foregoing reasons, defendants' motions to dismiss are granted, and the complaint is dismissed. Plaintiff is granted leave to file an amended complaint that remedies the deficiencies noted above within thirty days. If plaintiff fails to file an amended complaint within thirty days, judgment shall be entered, and the case shall be closed.

SO ORDERED.

                                   */s/ Rachel Kovner*
                                   RACHEL P. KOVNER
                                   United States District Judge

Dated: March 21, 2024
        Brooklyn, New York